63 U.S. 274
 22 How. 274
 16 L.Ed. 338
 THE UNITED STATES, APPELLANTS,
v.
RAFAEL GARCIA.
 December Term, 1859
 
 THIS was an appeal from the District Court of the United States for the northern district of California.
 The case is stated in the opinion of the court.
 It was argued by Mr. Stanton and Mr. Black (Attorney General) for the United States, and by Mr. Benham for the appellee.
 The Attorney General, after stating the case, said that the board of land commissioners rejected the claim unanimously. Judge Hoffman delivered an opinion concurring with the board, but Judge McAllister decided in favor of the claimant, expressing 'considerable doubt' of its legal justice. The United States have appealed. We ask the court to reverse the decree of confirmation, and reject the claim, upon the ground that there is absolutely no title whatever, nor anything that even by courtesy could be called a show of title. A Governor of the Department in 1844 gave the claimant a passport, so that he might go out and hunt for nine leagues of land, and, if he should happen to find any, gives him authority to take possession of it until a title could be made out. The claimant now says that he did happen to find exactly nine leagues of land, but he did not report to the Governor who gave him the roving commission under which he was travelling when he made the discovery. He waited nearly two years, until another Governor came into office, and then he did not proceed according to law by presenting a petition, and doing what the regulations of 1828 require. Nor did he ask for any definite action. The order of the Governor was as vague as the petition. It was simply an order that the alcalde of San Rafael might report. The alcalde made report, and in that report falsely stated that the land had been previously granted to the claimant by Micheltorena, and added, somewhat paradoxically, that it did not belong to any private individual, on account of its distance from the frontier. Slight evidence of occupancy is added to this, and there rests the case.
 Not a single provision contained in the act of 1824, or in the regulations of 1828, has been complied with or followed in all this business. It bears no sort of resemblance to the proceeding which those laws require to be instituted and carried on before an individual can be vested with a title to a portion of the public domain. It was wholly unlike the measures and acts and records which were usual in such cases. This is not a title derived from Mexico according to the laws or according to the customs of that Government. It is not a grant at all. It does not pretend to be a grant. It is folly to call Micheltorena's passport a grant of land; and Pico signed nothing but an order upon the alcalde to report upon the matter. The claim under such a title as this is so preposterous that it is impossible to argue against it with any sort of seriousness. It never was regarded as a title by the Mexican Government. There was no expediente on file. The papers are all produced from the private custody of the claimant himself. There is no trace of the proceeding to be found anywhere upon record. The genuineness of the papers is extremely doubtful. The proof would be regarded as defective, if the witnesses were men of good character; but the testimony comes from William A. Richardson and Manuel Castro, both of whom have been made utterly infamous by being frequently detected in the commission of wilful and corrupt perjuries.
 If anything were wanting to expose this claim to further contempt, it might be found in Micheltorena's proclamation of December 16, 1844, wherein he states exactly how he was employed on the 15th of November, the day upon which his passport to Garcia is dated. It makes it, to say the least, extremely improbable that he could on that day have done what he describes, and been at the same time in Monterey issuing such papers as this to Garcia, and transacting business in the way that Richardson describes.
 The seal affixed to Micheltorena's letter is a manifest forgery.
 Mr. Benham replied for the appellee:
 In this case, a brief for the appellee was filed two years ago, addressed to the views of the law agents of the Government as then known. Novel and startling views having since been offered by Mr. Attorney General in his brief in this case, as in others, it is deemed necessary to reply to them.
 In doing so, we shall quote Mr. Attorney General's remarks in the argument accompanying his brief seriatim, subjoining to each quotation such comments as may seem appropriate.
 'We ask the court to reverse the decree of confirmation, and reject the claim, upon the ground that there is absolutely no title whatever, nor anything that, even by courtesy, could be called a show of title. A Governor of the Department, in 1844, gave the claimant a passport, so that he might go out and hunt for nine leagues of land, and, if he should happen to find any, gives him authority to take possession of it until a title could be made out.'
 We maintain there is title, legal perhaps, certainly equitable. We care not to debate as to its dignity, since, for all purposes connected with this quasi litigation with the Government, an equitable title is as good as a legal title. We think a promise of title is imported at least in the authority to select, occupy with property, (cattle,) and hold possession of a tract, while the procedure (to obtain a titulo) was being had on the presentation of the requisite diseno; and that this promise, performance of the conditions of the decree and of the law being shown, entitles the claimant to a confirmation. He has held this land for sixteen years—save some parts from which he has been forcibly ejected.
 'The claimant now says that he did happen to find exactly nine leagues of land, but he did not report to the Governor who gave him the roving commission under which he was travelling when he made the discovery. He waited nearly two years, until another Governor came into office, and then he did not proceed according to law by presenting a petition, and doing what the regulations of 1828 require.'
 The delay should not provoke remark. There was no hurry. He was occupying the land during the two years, which was all the Government wanted. He had no reason to anticipate the change of flags.
 He did present a petition in substantial conformity with the regulations, and he did ask for definite action. If his petition to Pico was deficient, it is to be presumed that the one addressed to Micheltorena was satisfactory, since that officer acted favorably upon it. His request for appropriate action was sufficient. He informed Pico that Micheltorena had authorized his selection, & c., and required the diseno; that he had selected, &c.; offered the diseno, and prayed for such action as should be most proper.
 'Nor did he ask for any definite action. The order of the Governor was as vague as the petition. It was simply an order that the alcalde of San Rafael might report. The alcalde made report, and in that report falsely stated that the land had been previously granted to the claimant by Micheltorena, and added, somewhat paradoxically, that it did not belong to any private individual, on account of its distance from the frontier.'
 The order was relative, and so—amply sufficient. It required a pertinent report. Such a one was given. That report certified that Garcia had been for some time in occupation of the land; the transaction which he thought was a grant on Micheltorena's part; that the land was vacant; and assigned as his reason for saying so, that it lay in a section of country where he might well know, from its remoteness, there was no grant, except Richardson's, (which was Garcia's starting point,) and those of Juarez and Vallejo.
 'Slight evidence of occupancy is added to this, and there rests the case.'
 The occupancy was judicially ascertained by Pacheco in his report to Pico. Richardson, and Rosa, and Vallejo, prove its character.
 It was ample. Garcia had a house on the land, cultivated it, and had a large herd of cattle on it; had laborers on it, and this continuously.
 He resided alternately there and on another ranch.
 'Not a single provision contained in the act of 1824, or in the regulations of 1828, has been complied with or followed in all this business.'
 On the contrary, every provision but obtaining the titulo and the approval of the Departmental Assembly was complied with. There was a petition, with a diseno; there were cultivation and improvement; there was at least an implied order or promise to issue the titulo.
 'It bears no sort of resemblance to the proceeding which those laws require to be instituted and carried on before an individual can be vested with a title to a portion of the public domain.'
 Those laws do not imperatively require any particular proceedings.
 'It was wholly unlike the measures, and acts, and records, which were usual in such cases. This is not a title derived from Mexico, according to the laws or according to the customs of that Government.'
 The proceeding was substantially the same as the one most usual; the difference was in favor of the Government. Usually the grant was upon conditions subsequent; here they were to be performed in advance of the titulo. Custom and usage were well followed. The proceeding had not arrived at the stage of record.
 'It is not a grant at all. It does not pretend to be a grant. It is folly to call Micheltorena's passport a grant of land; and Pico signed nothing but an order upon the alcalde to report upon the matter. The claim, under such a title as this, is so preposterous that it is impossible to argue against it with any sort of seriousness.'
 It is plain the paper is not a mere passport. It gives authority beyond the permission to proceed to the northern frontier. It authorizes the selection and occupation of a tract of land, pending the usual proceedings to get a titulo, and by exacting the diseno, and speaking of such proceedings, impliedly promises at the least to give a titulo.
 'It never was regarded as a title by the Mexican Government.'
 There is no warrant for this remark. On the contrary, one of the Mexican officials pronounced the decree of Micheltorena a grant—a conclusion it is to be wondered Mr. Attorney General forgot, since it provoked him, in a former part of his brief, into pronouncing it a false statement, as if it had been an allegation of fact.
 'There was no expediente on file. The papers are all produced from the private custody of the claimant himself.'
 They had not yet been returned to the authorities after Pacheco's report. The report was dated April 29th, 1846, and the Government expired July 7th, 1846, having been much disturbed in the interval. The distance between San Rafael, where Pacheco lived, and Los Angeles, where Pico was, is from seven hundred or eight hundred to a thousand miles.
 'There is no trace of the proceeding to be found anywhere upon record.'
 As was said before, the proceedings had not arrived at the stage of record.
 'The genuineness of the papers is extremely doubtful.'
 The genuineness of the papers is established; the witnesses are not impeached.
 'If anything were wanting to expose this claim to further contempt, it might be found in Micheltorena's proclamation of December 16, 1844, wherein he states exactly how he was employed on the 15th of November, the day upon which his passport to Garcia is dated. It makes it, to say the least, extremely improbable that he could on that day have done what he describes, and been at the same time in Monterey issuing such papers as this to Garcia, and transacting business in the way that Richardson describes.'
 This is a mistake. The proclamation does not show he was absent from Monterey on the 15th of November, or employed in any other business.
 'The seal affixed to Micheltorena's letter is a manifest forgory.'
 There is no proof of this. Mr. Attorney General's repertory of photographic pictures affords no evidence for this court. If he wished the benefit of evidence of this kind, he should have introduced it in the court below. No practice can be more reprehensible than to offer and comment upon evidence dehors the record, and especially upon an issue not raised below.
 Mr. Justice CATRON delivered the opinion of the court.
 
 
 1
 The question in this case is, whether the land claimed was private property when we acquired California by treaty, or whether it then was part of the public domain of Mexico, and now belongs to the public lands of the United States.
 
 
 2
 1. If it was private property, it must have become so by the grant of a vested interest, that was good in equity; made by the granting power in the Territory of California, being authorized to exercise the sovereign power, as no other authority could divest the public title.
 
 
 3
 2. If the land in dispute was acquired by the United States, as public property, then the courts of justice have no jurisdiction of the subject matter, and cannot interfere. This is a postulate, not open to controversy. United States v. Forbes, 15 Peters, 182.
 
 
 4
 That the Mexican authorities, exercising the granting power in California, conferred no title on Garcia, we think satisfactorily appears, for the reasons set forth in the opinion of Judge Hoffman, delivered in the District Court, and found in the records, the most material parts of which opinion we adopt. The district judge says:
 
 
 5
 'In support of his claim, the appellant exhibits an order of Michelterona, dated November 15, 1844, which is as follows: 'According to your memorial of the 14th instant, you ask for the grant of a passport to penetrate into the points of the coast on the northern line of this country, with the object of locating a tract of land of the extent of eight to nine leagues, since that which you now occupy with your personal property is so limited. By this order, you are empowered to appear before the military commanding authority of that frontier, in order that, after an examination, you may proceed to your research after the tract of land you ask for, as a recompense for the services rendered by you to the nation.
 
 
 6
 "If you should happen to select any tract of land, you are empowered to occupy it with your said property, and to take possession of it while the usual procedure is being prosecuted, presenting the requisite sketch.
 
 
 7
 MANUEL MICHELTORENA.
 
 
 8
 "God and liberty.
 
 
 9
 "Monterey, November 15, 1844.
 
 
 10
 "To Don Rafael Garcia, at his rancho.'
 
 
 11
 'Availing himself of the permission thus granted, the claimant appears to have selected a tract of land, and to have occupied and improved it to some extent. No steps, however, were taken by him to obtain a title until March 4th, 1846, when Garcia addressed a petition to Gov. Pico, in which, after referring to the order of Micheltorena, he solicits a grant of the land. Gov. Pio Pico, by a marginal order, dated April 7th, 1846, referred the petition to the alcalde of San Rafael, for the usual informe. On the 29th of April, 1846, the alcalde reported that the land did not belong to any private individual. The foregoing constitutes all the evidence of title produced by the claimant. It is not pretended that any grant was ever issued for the land, or that any further action whatever was taken by Pio Pico on receiving the alcalde's informe. Whether he determined not to grant the land, or whether he omitted to do so in consequence of the distracted condition of public affairs, we are ignorant. One fact is clear: no grant was obtained by the claimant.
 
 
 12
 'A mere petition to search for land, such as that given to the present claimant, finds no place in the Mexican system.
 
 
 13
 'The application of Garcia to Micheltorena was for a passport to enable him to search for land. In granting this, and also the permission to put his cattle upon the tract he might select, Micheltorena in no respect bound himself or his successors to issue a final title. Such seems to have been the view of Pio Pico and the claimant himself, for a petition, accompanied by the usual diseno, is formally presented to that officer, and by him referred for information, as in other cases.
 
 
 14
 'If this claim is to be confirmed, every provisional license or permission temporarily to occupy land must be held to constitute an equitable title, provided the claimant has availed himself of the permission—a ruling which would astonish no one more than the old inhabitants of the country, by whom the importance of obtaining a 'title' from the Governor was well understood.
 
 
 15
 'For aught we know, Pio Pico, when the petition was subsequently presented, found it inexpedient to grant the land; and if the claimant, under a mere permission to occupy it with his cattle, has built a house upon it, and for two years omitted any effort to procure a title, he must attribute the loss of the land to his own neglect.'
 
 
 16
 The board of commissioners unanimously rejected the claim, from whose decision Garcia, the claimant, appealed to the District Court. There the judgment of the board was reversed, on a division of opinion, and a decree entered, confirming the claim, probably with a view of transmitting the cause to this court for final determination.
 
 
 17
 For the reasons above stated, it is ordered that the decree of the District Court be reversed. And the court below is directed to dismiss the petition; for which purpose, the cause is remanded.